

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AB:EAG/AL
F. #2010R00153

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 19, 2011

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

       Re:  United States v. Andrew Russo, et al.
            Criminal Docket No. 11 CR 30 (KAM)

Dear Judge Matsumoto:

       On February 3, 2011 and March 11, 2011, the government filed letters notifying the Court of certain potential attorney conflicts of interest that had come to the government's attention, including a conflict of interest pertaining to the representation of defendant Angelo Spata in the above-captioned case by attorney Joseph Corozzo, Jr.  See ECF Docket Entry Nos. 204 and 311.  Thereafter, the Court scheduled a hearing for April 21, 2011 at 2:30 p.m. to address the potential conflicts of interest pertaining to Mr. Corozzo's representation of Spata. The government respectfully submits this letter to notify the Court of an additional potential conflict involving Mr. Corozzo, namely that Mr. Corozzo is the subject of multiple pending criminal investigations being conducted by the United States Attorney's Office for the Eastern District of New York.

       The Office's investigations into Mr. Corozzo's participation in criminal activity have been detailed in several letters submitted pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982), in other cases.  See, e.g., United States v. Dino Saracino, Criminal Docket No. 08-240 (BMC) (E.D.N.Y.) (ECF Docket Entry No. 1096) (setting forth evidence of Mr. Corozzo's participation in a 2009 loansharking conspiracy with members and associates of the Gambino and Colombo organized crime families of La Cosa Nostra) (attached hereto as Exhibit A); United States v. Gaetano Napoli, Criminal Docket No. 10-150 (JG) (E.D.N.Y.) (ECF Docket Entry No. 10) (setting forth evidence of Mr. Corozzo's participation in a conspiracy to obstruct justice through tampering with a witness) (attached hereto at Exhibit B);

United States v. Nicholas Corozzo, Criminal Docket No. 09-078 (CBA) (E.D.N.Y.) (ECF Docket Entry No. 13 at 9-10) (setting forth evidence that Mr. Corozzo counseled individuals to perpetrate frauds on courts to receive shorter sentences) (attached hereto as Exhibit C); United States v. Joseph Agate, et al., Criminal Docket No. 08-076 (JBW) (E.D.N.Y.) (ECF Docket Entry No. 446, Exh. B at 14-21) (attached hereto as Exhibit D) (setting forth evidence of Mr. Corozzo's participation in a shooting in the late 1980s and in the use of Gambino organized crime family members and associates to collect debts on two occasions in the mid 1990s, and evidence that Mr. Corozzo has been recorded pledging allegiance to Gambino crime family boss John J. Gotti and was in fact proposed for membership in the Gambino crime family by his father).

The government advises the Court pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio. 680 F.2d at 888-90. See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

DISCUSSION

I.   Applicable Law

A criminal defendant's Sixth Amendment right to effective assistance of counsel includes the right to counsel unimpaired by conflicts of interest. See United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). Where there is even the possibility of a conflict of interest, the trial court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994); see also Wood v. Georgia, 450 U.S. 261, 272-73 (1981); Cuyler v. Sullivan, 446 U.S. 335, 347 (1980); Stantini, 85 F.3d at 13. If the inquiry reveals that an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the Court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461 (2d Cir. 1995); Levy, 25 F.3d at 153.

If the conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures

set forth in Curcio.  See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986).  In summarizing the Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict;
> (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and
> (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90.  By routinely relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims.  See United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Notwithstanding a defendant's willingness to waive his attorney's conflict of interest, courts retain "substantial latitude" in refusing such waivers.  See Wheat v. United States, 486 U.S. 153, 163 (1988) ("[W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.").  This is so because "'[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'"  United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993) (quoting Wheat, 486 U.S. at 160); see also United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) ("[D]isqualification . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in a fair trial and a just verdict.").

II.  Additional Potential Conflict of Interest

Courts have long recognized that a defense attorney who is under investigation by the government has a potential conflict of interest.  See Armienti v. United States, 234 F.3d 820, 824

3

(2d Cir. 2000); <u>United States v. Reyes-Vejerano</u>, 276 F.3d 94, 99 (1st Cir. 2002). As the Second Circuit has explained:

> A lawyer in these circumstances, while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best interest of the lawyer's client.

<u>Armienti</u>, 234 F.3d at 824.

Furthermore, an actual conflict, requiring disqualification, exists when the attorney is "implicated in the crimes of his or her client since, in that event, the attorney cannot be free from fear that 'vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's own wrong doing.'" <u>United States v. Gambino</u>, 838 F. Supp. 759 (S.D.N.Y. 1993) (quoting <u>United States v. Fulton</u>, 5 F.3d 605, 611 (2d Cir. 1993)). The conflict, however, may be waived so long as "the attorney's alleged criminal activity [is not] sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." <u>Fulton</u>, 5 F.3d at 611.

As a result of these ongoing investigations, a potential conflict exists here because of the incentive Mr. Corozzo has to "curry favor" with the government.

III. <u>Proposed Questions</u>

As an initial matter, the Court should determine, in its exercise of substantial discretion, whether disqualification is warranted due to the potential conflict of interest discussed above. See <u>Wheat</u>, 486 U.S. at 163. Should the Court believe that the potential conflict can be waived, the government respectfully suggests that the Court obtain the defendant Angelo Spata's informed waiver pursuant to the following procedures: (1) the court advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) the court instructs the defendant as to the dangers arising from particular conflicts, (3) the court permits the defendant to confer with his chosen counsel, (4) the court encourages the defendant to seek advice from independent counsel, (5) the court allows a reasonable time for the defendant to make a decision, and (6) the court determines whether the defendant understands

the risks of representation by his present counsel and freely chooses to run them.  <u>Perez</u>, 325 F.3d at 124; <u>Curcio</u>, 680 F.2d at 888-90.

In addition to the proposals set forth in the government's letters dated February 3, 2011 and March 11, 2011, the government respectfully suggests that the Court give, in substance, the following advice to the defendant Angelo Spata at a <u>Curcio</u> hearing:

> I am also advised that your attorney is being investigated by the same prosecutor's office that has prosecuted you.  It is possible that your attorney could make decisions about your case, consciously or unconsciously, with an eye to how such decisions might affect the government's decision whether or not to prosecute him.  For example, your attorney could elect or not elect to make certain arguments, introduce certain evidence, pursue certain leads or undertake certain trial strategies that he believes will lead to a favorable result in the case against him but which might lead to an unfavorable result in the case against you.

## IV.  <u>Conclusion</u>

At the hearing scheduled for April 21, 2011 at 2:30 p.m., the government respectfully requests that the Court conduct an inquiry into the conflicts of interest present in this case, and if the Court deems the conflicts waivable, the government further requests a <u>Curcio</u> hearing to determine whether the

defendant is willing to give up his right to conflict-free representation.

                                      Respectfully submitted,

                                      LORETTA E. LYNCH
                                      United States Attorney

                         By:  /s/ Elizabeth Geddes
                             Elizabeth A. Geddes
                             Allon Lifshitz
                             Assistant U.S. Attorneys

cc:  Joseph Corozzo, Esq. (Counsel to Angelo Spata) (via ECF)