

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

AB:EAG
F.#2008R00530

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 9, 2011


By Hand Delivery & ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Dino Saracino
          Criminal Docket No. 08-0240 (S-6) (BMC)

Dear Judge Cogan:

       On June 12, 2009, the government submitted a letter notifying the Court of potential conflicts stemming from Joseph Corozzo, Jr.'s prior representation of Colombo family member Theodore Persico, Jr., and of Mr. Corozzo's knowledge that he was a subject of a pending criminal investigation being conducted by the United States Attorney's Office for the Eastern District of New York.  The government now respectfully submits this letter to advise the Court of an additional potential conflict involving Mr. Corozzo.  The conflict issues are as follows: (1) Mr. Corozzo arranged a meeting between an individual who is now a cooperating witness and a member of the Colombo organized crime family of La Cosa Nostra (the "Colombo family"), and (2) Mr. Corozzo is the subject of an additional criminal investigation being conducted by the United States Attorney's Office for the Eastern District of New York.  As the Court is aware, jury selection in the above-referenced case is scheduled to commence on May 9, 2011.

       The government advises the Court pursuant to its obligation under Second Circuit law so the Court may conduct an appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982).  See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

I.    Pertinent Background

        In the superseding indictment identified as S-6 (hereinafter "Ind."), Saracino, an inducted member of the Colombo family, is charged with, inter alia, conspiring to make extortionate extensions of credit between 2002 and 2008.  (Ind. ¶¶ 53, 67.)  Before his arrest in June 2008, Saracino arranged for another inducted member of the Colombo family, who is now cooperating with the government ("CW-1"), to assume responsibility of Saracino's loansharking business in the event that Saracino was arrested.  CW-1 advised that Saracino also provided the names of his loansharking customers to Gaetano Gallo, a Colombo family associate who reported to Saracino.[1]

        In or about the summer of 2009, a Colombo family associate told CW-1 that another Colombo family member, Anthony Russo, had "claimed" several of the individuals who were in Saracino's crew prior to Saracino's incarceration, including Gallo.  CW-1 learned that Russo also had assumed responsibility for Saracino's loansharking business, and was keeping one-third of the proceeds for himself and splitting the remaining two-thirds of the proceeds between Saracino and Gallo, who was collecting the payments.  CW-1 further learned that Russo planned to contact a soldier in the Gambino organized crime family of La Cosa Nostra (the "Gambino family"), who had ties to Gallo, after Gallo complained about Russo's actions.

        Subsequently, CW-1 met with Mr. Corozzo, who at the time was representing Saracino, at Mr. Corozzo's office to discuss a subpoena that CW-1 had received pertaining to his membership in a union.  During the meeting, CW-1 advised Mr. Corozzo, who CW-1 knew had blood relatives who were members of the Gambino family, of Russo's actions.  Mr. Corozzo recommended that CW-1 meet with Theodore Persico, Jr. ("Persico") and agreed to set up a meeting between CW-1 and Persico.  That night, CW-1 passed a message to Saracino, who was incarcerated in the Brooklyn Metropolitan Detention Center, that "A.R. [a reference to Russo] is now going to see your son [a reference to Gallo]." Saracino responded, in sum and substance, "What are they looking

_____

        [1]    In an indictment returned by a grand jury in the Eastern District of New York on January 12, 2011, Gaetano Gallo and Theodore Persico, Jr., were charged with, among other crimes, their participation in making extortionate extensions of credit in connection with Saracino's loansharking business.  See United States v. Andrew Russo, et al., CR 11-0030 (KAM), ECF Docket Entry No. 1.

to take my money?"   CW-1 construed Saracino's response to mean
that Saracino had not authorized Russo to take over
responsibility for the individuals in Saracino's crew and
Saracino's loansharking business.

        The following day, CW-1 traveled to Mr. Corozzo's
residence.   After Persico arrived, Mr. Corozzo excused himself
and allowed CW-1 and Persico to meet.   Persico advised CW-1 that
CW-1 could keep the loansharking proceeds if CW-1 collected the
payments, but that a portion of any other criminal proceeds
generated by individuals in Saracino's crew would belong to Russo
and Persico because CW-1, who did not reside in the New York
metropolitan area, was not available to "service" Saracino's
loanshark customers.

II.   Discussion

    A.   Applicable Law

        A criminal defendant's Sixth Amendment right to
effective assistance of counsel includes the right to counsel
unimpaired by conflicts of interest.   See United States v. Perez,
325 F.3d 115, 124 (2d Cir. 2003).   Where there is even the
possibility of a conflict of interest, the trial court "must
investigate the facts and details of the attorney's interests to
determine whether the attorney in fact suffers from an actual
conflict, a potential conflict, or no genuine conflict at all."
United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994); see also
Wood v. Georgia, 450 U.S. 261, 272-73 (1981); Cuyler v. Sullivan,
446 U.S. 335, 347 (1980); Stantini, 85 F.3d at 13.   If the
inquiry reveals that an attorney suffers from an actual or
potential conflict of such a serious nature that no rational
defendant would knowingly and intelligently desire that
attorney's representation, the Court must disqualify that
attorney.   See United States v. Lussier, 71 F.3d 456, 461 (2d
Cir. 1995); Levy, 25 F.3d at 153.

        If the conflict is such that a rational defendant could
knowingly and intelligently choose to continue to be represented
by the conflicted attorney, the Court must obtain directly from
the defendant a valid waiver in accordance with the procedures
set forth in Curcio.   See, e.g., Malpiedi, 62 F.3d at 470; Levy,
25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d
Cir. 1986).   In summarizing the Curcio procedures, the Second
Circuit has instructed the trial court to:

        (i) advise the defendant of the dangers
        arising from the particular conflict;
        (ii) determine through questions that are

>likely to be answered in narrative form
>whether the defendant understands those risks
>and freely chooses to run them; and
>(iii) give the defendant time to digest and
>contemplate the risks after encouraging him
>or her to seek advice from independent
>counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90.  By
routinely relying on waivers of potential conflict claims, courts
are spared from having to wade into the intricacies of those
claims.  See United States v. Jiang, 140 F.3d 124, 128 (2d Cir.
1998).

        Notwithstanding a defendant's willingness to waive his
attorney's conflict of interest, courts retain "substantial
latitude" in refusing such waivers.  See Wheat v. United States,
486 U.S. 153, 163 (1988) ("[W]e think the district court must be
allowed substantial latitude in refusing waivers of conflicts of
interest not only in those rare cases where an actual conflict
may be demonstrated before trial, but in the more common cases
where a potential for conflict exists which may or may not
burgeon into an actual conflict as the trial progresses.").  This
is so because "'[f]ederal courts have an independent interest in
ensuring that criminal trials are conducted within the ethical
standards of the profession and that legal proceedings appear
fair to all who observe them.'"  United States v. Locascio,
6 F.3d 924, 931 (2d Cir. 1993) (quoting Wheat, 486 U.S. at 160);
see also United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004)
("[D]isqualification . . . implicates not only the accused's
right to counsel, but also the interests of the judiciary in
preserving the integrity of its processes, and the government's
interest in a fair trial and a just verdict.").

     B.    Potential Conflicts of Interest

          1.    Joseph Corozzo, Jr. May Be A Potential
                Co-Conspirator and An Unsworn Witness

        Allegations that defense counsel is entangled in the
facts of the defendant's criminal conduct may create an
unwaivable conflict of interest.  See United States v. Williams,
372 F.3d 96, 105 (2d Cir. 2004) (finding unwaivable conflict of
interest where counsel unlawfully exchanged firearms with
defendant indicted for using firearms in furtherance of his
criminal activities); United States v. Fulton, 5 F.3d 605, 609-10
(2d Cir. 1993) (finding that defendant convicted of heroin
trafficking was deprived of effective assistance of counsel where
a government witness alleged that counsel received part of the

heroin linked to defendant and was involved in heroin trafficking).  "If the allegations are true, an attorney cannot freely advise the client whether to cooperate, or whether to take the stand at trial, for fear that the client could reveal information implicating the attorney."  United States v. Pizzonia, 415 F. Supp. 2d 168, 182 (E.D.N.Y. 2006) (citing Fulton, 5 F.3d at 610).  See also United States v. Gotti, 9 F. Supp. 2d 320, 324 (S.D.N.Y. 1998) ("[T]he attorney's desire to minimize his own involvement in the events in question or to characterize his own conduct favorably creates pressures potentially inimical to his client's interests." (citing Locascio, 6 F.3d at 933; United States v. Arrington, 867 F.2d 122, 129 (2d Cir. 1989))).  "If the allegations are false, the attorney cannot examine the government witness regarding the allegations against the attorney without in effect becoming an unsworn witness."  Pizzonia, 415 F. Supp. 2d at 182.  See also Locascio, 6 F.3d at 931-34 (disqualification is warranted should defense counsel either be available as a witness or would, upon remaining as defense counsel, "become an unsworn witness for the accused").

However, an unwaivable conflict does not arise "any time a court learns that an attorney may have committed a crime; the attorney's alleged criminal activity must be sufficiently related to the charged crimes to create a real possibility that the attorney"s vigorous defense of his client will be compromised."[2]  Fulton, 5 F.3d at 610 (emphasis added).  See also United States v. Cancilla, 725 F.2d 867, 870 (2d Cir. 1984) (defendant could not waive a conflict where, unbeknownst to him, his counsel allegedly engaged in criminal activities similar to the charges against defendant with a possible co-conspirator of defendant).  Additionally, disqualification may not be required when there is an agreed-upon means of limiting an inquiry to eliminate the risk of the lawyer becoming an unsworn witness. See United States v. Kliti, 156 F.3d 150, 156 n.7 (2d Cir. 1998) ("An agreement to limit inquiry to avoid the problem of counsel as an unsworn witness may be appropriate in some circumstances." (citation omitted)); United States v. Jones, 900 F.2d 512, 520 (2d Cir. 1990).  Cf. Gotti, 9 F. Supp. 2d at 324 ("[I]t is not clear why testimony regarding the purpose of the Foxwoods gathering must specifically refer to [the attorney] as a participant.").

---

[2]    The Second Circuit also has left unresolved "whether a defendant's knowledge of the attorney's criminal conduct permits waiver of a 'related-crime' conflict."  Pizzonia, 415 F. Supp. 2d at 182 (citing Williams, 372 F.3d at 105).

In the present case, Mr. Corozzo arranged a meeting
between two members of the Colombo family, Persico and CW-1, in
an effort to resolve a brewing dispute in the Colombo family.
Because the conduct occurred more than a year after Saracino's
arrest and was not within the period of charged conduct, Mr.
Corozzo's actions do not appear to be sufficiently related to the
crimes with which Saracino is charged to amount to an unwaivable
conflict of interest. Furthermore, in an effort to avoid an
adjournment of the previously-scheduled trial and if Saracino
seeks to waive the potential conflicts set forth herein, the
government proposes that CW-1 not reference Mr. Corozzo by name
(and instead to refer to him as a lawyer) and that Mr. Corozzo
not identify himself as the lawyer who arranged the meeting
between CW-1 and Persico. Under such a proposal, the government
respectfully submits that Mr. Corozzo's continued representation
of Saracino - notwithstanding his first-hand knowledge of certain
facts – would amount to a waivable potential conflict.

> 2.  Joseph Corozzo Jr. Is The Subject Of
>     <u>On-Going Criminal Investigations</u>

In any event, as a result of the information provided
by CW-1, an additional potential conflict exists here because of
the incentive Mr. Corozzo now has to "curry favor" with the
government. Courts have long recognized that a defense attorney
who is under investigation by the government may have a potential
conflict of interest. <u>See</u> <u>Armienti v. United States</u>, 234 F.3d
820, 824 (2d Cir. 2000); <u>United States v. Reyes-Vejerano</u>, 276
F.3d 94, 99 (1st Cir. 2002); <u>Thompkins v. Cohen</u>, 965 F.2d 330,
332 (7th Cir. 1992); <u>United States v. McLain</u>, 823 F.2d 1457, 1463
(11th Cir. 1987); <u>Briguglio v. United States</u>, 675 F.2d 81, 82 (3d
Cir. 1982). As the Second Circuit has explained:

> A lawyer in these circumstances, while
> dealing on behalf of his client with the
> office that is prosecuting him personally
> may, consciously or otherwise, seek the
> goodwill of the office for his own benefit.
> A lawyer's attempt to seek the goodwill of
> the prosecutor may not always be in the best
> interest of the lawyer's client.

<u>Armienti</u>, 234 F.3d at 824.

Furthermore, an actual conflict, requiring
disqualification of an attorney, exists when the attorney is
"implicated in the crimes of his or her client since, in that
event, the attorney cannot be free from fear that 'vigorous
defense should lead the prosecutor or the trial judge to discover

evidence of the attorney's own wrong doing.'" <u>United States v.</u>
<u>Gambino</u>, 838 F. Supp. 759 (S.D.N.Y. 1993) (quoting <u>United States</u>
<u>v. Cortland Bay Fulton</u>, 5 F.3d 605, 611 (2d Cir. 1993)).  The
conflict, however, may be waived so long as "the attorney's
alleged criminal activity [is not] sufficiently related to the
charged crimes to create a real possibility that the attorney's
vigorous defense of his client will be compromised." <u>Cortland</u>
<u>Bay Fulton</u>, 5 F.3d at 611.

III. <u>Proposed Questions</u>

        As an initial matter, the Court should determine, in
its exercise of substantial discretion, whether disqualification
is warranted due to the potential conflicts of interest discussed
above.  <u>See</u> <u>Wheat</u>, 486 U.S. at 163.  Should Saracino consent to
the proposed limitation of CW-1's testimony and should the Court
believe that the potential conflicts can be waived, the
government respectfully suggests that the Court obtain the
defendant Saracino's informed waiver pursuant to the following
procedures: (1) the court advises the defendant of his right to
representation by an attorney who has no conflict of interest,
(2) the court instructs the defendant as to the dangers arising
from particular conflicts, (3) the court permits the defendant to
confer with his chosen counsel, (4) the court encourages the
defendant to seek advice from independent counsel, (5) the court
allows a reasonable time for the defendant to make a decision,
and (6) the court determines whether the defendant understands
the risks of representation by his present counsel and freely
chooses to run them.  <u>Perez</u>, 325 F.3d at 124; <u>Curcio</u>, 680 F.2d at
888-90.

        The government respectfully suggests that the Court
give, in substance, the following advice to the defendant
Saracino and include the following questions, at a <u>Curcio</u>
hearing:

>        The government has alleged that your lawyer has
>        personal knowledge of facts about which a witness
>        may testify.  It is possible that you would want
>        to call your attorney as a witness on your behalf,
>        which would not be possible if you seek to
>        continue to be represented by him.
>
>        I am also advised that your attorney is being
>        investigated by the same prosecutor's office that has
>        prosecuted you.  It is possible that your attorney
>        could make decisions about your case, consciously or
>        unconsciously, with an eye to how such decisions might
>        affect the government's decision whether or not to

prosecute him.  For example, your attorney could elect
or not elect to make certain arguments, introduce
certain evidence, pursue certain leads or undertake
certain trial strategies that he believes will lead to
a favorable result in the case against him but which
might lead to an unfavorable result in the case against
you.

There may be other issues, in addition to the ones
that I have just described, that can arise in
which your attorney's ability to do certain things
might be affected by the fact he has first-hand
knowledge of certain information and/or by the
fact that he is being investigated by the same
prosecutor's office that is prosecuting you.  No
one can foresee every possible conflict of
interest.

Do you have any questions about what I've just
explained to you?

Can you tell me in your own words what you
understand the potential conflicts of interest to
be?

You have the right to be represented by an
attorney who does not have any possible conflicts
of interest in representing you at all stages of
this case.  If you proceed with your current
attorney as your attorney, you will be giving up
that right.  Do you understand that?

Have you discussed these issues with your lawyer?

You also have the right to consult with an
independent lawyer who can advise you about the
possible conflicts of interest that might arise if
you proceed with your current attorney.  Do you
understand that?

You are not under any pressure to make a decision
about this right now.  You are entitled, if you
wish, to a reasonable period of time to think
about these matters, or to consult further with
your lawyer or with another lawyer before you
advise the Court what you wish to do.

IV.   <u>Conclusion</u>

      As described above, the government respectfully requests that the Court conduct an inquiry into the conflict of interest present in this case, and if the Court deems the conflict waivable, the government further requests a <u>Curcio</u> hearing to determine whether the defendant is willing to give up his right to conflict-free representation.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   <u>/s/ Elizabeth Geddes</u>
Elizabeth A. Geddes
James D. Gatta
Cristina M. Posa
Assistant U.S. Attorneys

cc:  Joseph Corozzo, Esq. (Counsel to Dino Saracino) (via ECF)

9