TM:EAG/AL/GP
F.#2010R00153

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ANGELO SPATA,

           Defendant.

S U P E R S E D I N G
I N F O R M A T I O N

Cr. No. <u>11-30 (S-4)(KAM)</u>
(T. 18, U.S.C., §§ 1962(d),
1963(a), 1963(m) and
3551 <u>et</u> <u>seq</u>.)

- - - - - - - - - - - - - - - - - -X

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

    At all times relevant to this Superseding Information, unless otherwise indicated:

<u>The Enterprise</u>

    1.    The members and associates of the Colombo organized crime family of La Cosa Nostra constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact (hereinafter, the "Colombo crime family" and the "enterprise"). The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Colombo crime family engaged in, and its activities affected, interstate and foreign commerce. The Colombo crime family was an organized criminal

group that operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime families. Five of these crime families - the Bonanno, Colombo, Gambino, Genovese and Luchese crime families - were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3. The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4. The Colombo crime family had a hierarchy and structure. The head of the Colombo crime family was known as the "boss." The Colombo crime family boss was assisted by an "underboss" and a counselor known as a "consigliere." Together, the boss, underboss and consigliere were the crime family's "administration." With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups. The

administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Colombo crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, the Colombo crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5. Below the administration of the Colombo crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6. Only members of the Colombo crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been

"straightened out" or who had their "button." Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7.  Many requirements existed before an associate could become a member of the Colombo crime family. The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

## Methods and Means of the Enterprise

8. The principal purpose of the Colombo crime family was to generate money for its members and associates. This purpose was implemented by members and associates of the Colombo crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, illegal gambling and loansharking. The members and associates of the Colombo crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Colombo crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of the Colombo crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or

associates of the crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Colombo crime family often coordinated criminal activity with members and associates of other organized crime families.

## The Defendant

12. At various times relevant to this Superseding Information, the defendant ANGELO SPATA was an associate within the Colombo crime family.

## RACKETEERING CONSPIRACY

13. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. In or about and between January 2003 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANGELO SPATA, together with others, being a person employed by and associated with the Colombo crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States

Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below. The defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

### RACKETEERING ACT ONE
(Money Laundering Conspiracy –
ROGER CALIFANO's Illegal Gambling Business)

15. In or about and between 2008 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANGELO SPATA, together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: proceeds from ROGER CALIFANO's illegal gambling business, contrary to New York Penal Law Sections 225.05 and 20.00, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(A)(i).

### RACKETEERING ACT TWO
(Illegal Gambling)

16. In or about and between March 2010 and July 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANGELO SPATA,

together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving poker games and joker-poker machines, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

(Title 18, United States Code, Sections 1962(d), 1963(a) and 3551 et seq.)

## FORFEITURE ALLEGATION

17. The United States hereby gives notice to the defendant that, upon conviction of the offense charged herein, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 1963(a), which requires any person convicted of such offense to forfeit: (a) any interest the person acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claims against, or property or contractual right of any kind affording a source of influence over any enterprise which the person has

8

established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962.

18. The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2) and (a)(3) include, but are not limited to, at least $50,000.

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136